**MYERS v. UNITED STATES.**

No. 8171(2).

United States District Court
E. D. Missouri, E. D.

May 28, 1953.

Supplemental Opinion June 17, 1953.

---

Daniel Heagney, St. Louis, Mo., for plaintiff.

George L. Robertson, U. S. Atty., and James C. Jones, III, Sp. Asst. to the U. S. Atty., St. Louis, Mo., for defendant.

HULEN, District Judge.

Plaintiff sues to have a life insurance policy issued to him by defendant while he was in the military service declared to be in force with premiums waived, because his failure to make timely application for waiver of premiums was due to circumstances beyond his control. See Title 38 U.S.C.A. § 802(n).[1] There is no issue as to total disability of plaintiff, or that total disability has continued for more than six months, or that the total disability commenced while the insurance was in force and prior to insured's sixtieth birthday. Plaintiff did not make application for waiver of premiums within the statutory period of one year after August 1, 1946. It is agreed the only issue for determination is whether plaintiff's failure to make timely application for waiver of premiums was due to "circumstances beyond his control" under the terms of the statute. We hold it was.

While in the armed service plaintiff purchased a $10,000 life insurance policy from defendant. Plaintiff paid premiums on the policy to February, 1946. He has never been given a certificate setting forth the terms of the insurance contract.

Plaintiff entered the armed service in December, 1942, in good health. He was discharged December 31, 1945, totally disabled by tuberculosis.

At the time of, but prior to, plaintiff's discharge from the armed service, under army regulations and pursuant to orders, he was examined physically, including an X-ray, by defendant's doctors. This examination was for the purpose of determining plaintiff's physical condition as of the time of discharge. Plaintiff was informed at the time of examination that if any physical disability was found he "would be called back." After the examination he was not "called back" nor informed that he had any disability. An examination by defendant after August 1, 1947, of the X-ray film taken at time of discharge resulted in a report by defendant that the film showed symptoms of tuberculosis. Defendant admits its doctors failed to discover,

---

1. "Upon application by the insured and under such regulations as the Administrator may promulgate, payment of premiums on such insurance may be waived during the continuous total disability of the insured, which continues or has continued for six or more consecutive months, if such disability commenced (1) subsequent to the date of his application for insurance, (2) while the insurance was in force under premium-paying conditions, and (3) prior to the insured's sixtieth birthday: *Provided*, That upon application made within one year after August 1, 1946 the Administrator shall grant waiver of any premium becoming due not more than five years prior to August 1, 1946 which may be waived under the foregoing provisions of this sub-section: *Provided further*, That the Administrator, upon any application made subsequent to one year after August 1, 1946, shall not grant waiver of any premium becoming due more than one year prior to the receipt in the Veterans' Administration of application for the same, except as hereinafter provided. * * * *Provided further*, That in any case in which the Administrator finds that the insured's failure to make timely application for waiver of premiums or his failure to submit satisfactory evidence of the existence or continuance of total disability was due to circumstances beyond his control, the Administrator may grant waiver or continuance of waiver of premiums: * * *."

at time of discharge, the disease from which plaintiff was then suffering.

On July 22, 1947, the disease had progressed to a condition that produced a hemorrhage while plaintiff was at work. Plaintiff was examined by a company doctor of his employer and at a public clinic and was advised to go to defendant's Veterans' Administration, as soon as it was discovered he was an ex-service man.

Plaintiff reported to the defendant's Veterans' Administration July 23, 1947. He then made application to the defendant, through the Veterans' Administration, for hospitalization. He received a preliminary examination by defendant's doctors prior to August 1st and was informed he then had active tuberculosis. He was admitted to the Veterans' Hospital soon after August 1st and has been there ever since.

Plaintiff inquired of the defendant about his rights under his "Government insurance" in July and a few days prior to August 1, 1947. He was then told by defendant's Veterans' Administration consultant that all he could then do was to apply for reinstatement of his lapsed policy. He proceeded to make such application. The form was filled out by defendant. In the application plaintiff, relying on defendant's physical examination report to him made at time of his discharge, stated his health was good at that time, but that he now had active tuberculosis. Under the law a lapsed policy cannot be reinstated unless the applicant is in good health when the application is made. 38 C.F.R. §§ 8.23, 8.24. Defendant, on the information in plaintiff's application, was required to and did reject the application for reinstatement of his insurance. In telling plaintiff all he could do was to apply for reinstatement, instead of to apply for a waiver of premiums (seven days still remaining under the law for such action to be taken) defendant's agent relied on the good health findings at time of discharge as then conveyed by plaintiff to the agent of defendant.

August 1, 1947, was the last day within which plaintiff could apply for reinstatement of his insurance policy, with waiver of premiums because of total disability, unless plaintiff's failure to apply on or before said date was due to circumstances beyond his control.

The conclusion is self-evident from the admitted facts that plaintiff's physical condition was total disability, within the meaning of his policy at the time of his last physical examination by defendant before discharge from the Army, while his insurance was in effect, and has been continuous thereafter, and that plaintiff could have had his insurance premiums waived as a matter of right had he made application prior to August 1, 1947.

The further conclusion must be made, that during the period prior to August 1, 1947, plaintiff was again examined by defendant's doctors and defendant still did not inform plaintiff that he had tuberculosis and was totally disabled at the time of his discharge and while his policy was in effect.

We assume plaintiff, although never given a copy of his insurance contract, is charged with knowledge of its terms and the law and the conditions governing his right to apply for waiver of premiums because of total disability.

We find on this record that had plaintiff known, prior to August 1, 1947, that he was totally disabled on discharge and while his policy was in effect, he would have applied for waiver of premiums. This conclusion is justified because plaintiff as a witness impressed us as a reasonably intelligent man, and pure self-interest would have led him to take the action. He was conscious of his insurance. This is shown by the inquiry made in July, 1947, as soon as he was informed he then had active tuberculosis.

What then were the circumstances that stayed plaintiff's hand from making application prior to August 1, 1947, for waiver of premiums on his policy? An application which it is now conceded he had a right to make and which defendant would have had to grant. Were the circumstances beyond plaintiff's control? The chain of circumstances starts with the failure of defendant's doctors to inform plaintiff at time

of his discharge that as a result of their physical examination they found him totally disabled from tuberculosis.

Defendant raises the question whether any examination at time of discharge would have revealed plaintiff's true condition. If it were necessary to decide this question, the fact that defendant's doctor, looking at the X-ray taken at time of discharge, on March 22, 1951, found "an infiltrative process in the right upper lobe" of the lung shown by it is some evidence that a careful examination at time of discharge would have resulted in like finding. Whether we view the results of the physical examination of plaintiff at time of discharge as caused by failure of defendant to perform a careful and complete examination, or that an examination would not have revealed the physical disability, the conclusion remains the same.

Defendant made the examination at a time selected by it. This was a circumstance over which plaintiff had no control. Defendant chose the doctors to make the examination. Over this plaintiff had no control. Defendant conducted the examination according to its own plan. This was a circumstance beyond plaintiff's control. What defendant could find upon the examination and would reveal to plaintiff as a result of the examination was a circumstance beyond plaintiff's control. The acts of defendant in the course of its conduct, whether or not involving negligence, in leading plaintiff to believe he had no physical ailment, were each and all circumstances beyond plaintiff's control.

We come to events which transpired during the week prior to August 1, 1947. Defendant at this time again examined plaintiff. Defendant found plaintiff had tuberculosis at this time. This was the last week of July, 1947. No information was given by defendant as to the date of the onset of the disease at this time. Plaintiff was informed he had active tuberculosis. Then plaintiff, based on defendant's prior advice to him at time of discharge that he had no disability, was led to believe he had contracted tuberculosis since his discharge. He so informed defendant in applying for reinstatement of his policy.

Again the circumstances are all beyond plaintiff's control. He did not control the nature and extent of defendant's examination. Failure to then determine that the onset of the disease was prior to plaintiff's discharge was due to the nature, character and extent of defendant's examination. Plaintiff had no control over it. Defendant was then holding the X-ray taken at time of plaintiff's discharge. At a later date, after August 1, 1947, defendant did re-examine the plate and then informed plaintiff of the showing of "infiltration" of the lung.

If plaintiff had been in possession of information prior to August 1, 1947, that the X-ray taken at time of discharge showed tuberculosis, he still would have had time within the statutory period to apply for waiver of premiums. The circumstances that prevented such application thus existed and were continued until after August 1, 1947. Were they beyond plaintiff's control? Plaintiff had no control over the vital circumstance of whether defendant would re-examine the discharge X-ray, prior to August 1, 1947, and then admit his total disability before that date, or whether such examination and admission would be done subsequent to August 1, 1947. There is no evidence or claim that plaintiff knew where the discharge X-ray was at any time before August, 1947. There is no evidence that plaintiff had knowledge of any cause for its re-examination.

The conduct of defendant referred to at time of discharge and just prior to August, 1947, created events into which plaintiff as a soldier and discharged soldier, was forced and led. They represent "circumstances" that naturally placed plaintiff in a state of mind in which he did not move to have the premiums waived on his insurance policy, as he had a right to do. They were as effective as if plaintiff had been told his condition but because of mental deficiency failed to comprehend its significance. In one case there are no facts for the mind to act on. In the other there are facts but no mind to operate. In each of the situations we have circumstances beyond the control of the insured, which cause him to fail to act.

These circumstances which caused plaintiff to "fail" to make application for waiver of premiums on his insurance policy doubtless were given birth by the hazards, confusion, and uncertainties that follow in the wake of war, yet had they been deliberately planned to prevent plaintiff from asserting his rights it would not have been necessary to change their sequence in order to have brought about the same results. At no place in the chain of events constituting the preventive circumstances is it suggested by the defendant that plaintiff was either in control or had the right to control.

We find the *circumstances* which caused plaintiff to *fail* to make application for waiver of premiums on his insurance policy were beyond plaintiff's *control*.

Let judgment for plaintiff be settled and submitted.

### Supplemental Memorandum

The parties are unable to settle the form of judgment. Plaintiff seeks allowance of attorney's fee under Title 38, U.S.C.A. § 551. Defendant says the case does not come within section 445 of the same title. We conclude it does.

Plaintiff filed a claim specifically requesting the reinstatement of his policy and waiver of premiums. This claim was denied by defendant. These two acts are the foundation of jurisdiction in this case.

■ Section 445 of the Code defines a "claim", as the term is used in the section, as any writing which uses words "showing an intention to claim insurance benefits". The insured is not required to claim immediate insurance benefits to meet the test. By moving to have his policy reinstated and premiums waived, plaintiff shows an intention to claim insurance at some future day. The claim, if any, will be by the beneficiary under the policy, but there is no requirement that the benefits must be payable to the party presenting the claim. This is a suit on a claim under section 445.

Section 551 of the Code restricts attorney's fees payable by a veteran prosecuting an action under section 445. Only a contingent fee can be paid by the veteran, not to exceed 10% of the amount recovered under the judgment.

In this case there is a contingency as to any amount ever being paid, (1) that the total disability shall continue until death, or (2) if plaintiff should recover, that he pay premiums until death.

■ In case of death, with the insurance in effect, any amount paid by defendant will be paid as a result of the judgment in this case. Absent this judgment there would be no liability for any insurance. We do not believe the term "under" as used in section 551, restricting the attorney's fees not to exceed 10% of the payment made "under" the judgment, should be restricted only to judgments for the specific payment of a sum certain. To so construe the statute would call for a delay in a case of this character until plaintiff's death, then a suit to reinstate with waiver of premiums. Since the insured is only entitled to a waiver of premiums during disability this suit is not premature. Defendant does not contend it is. It follows the suit must be prosecuted under section 445, otherwise it could not be maintained. If it could not be maintained now, there is a possibility it could never be maintained even after death, since in case of recovery of plaintiff defendant will not accept premiums, absent this judgment.

■ A strict construction of section 551 does present an apparent base for defendant's position. We give a liberal construction to the section to effect its purpose to protect the veteran against charge for legal services, other than a restricted percent of amount recovered on the policy. The defendant can have no interest in such payment other than to effect a payment in accord with the statute.

There may be hardship in some cases. Plaintiff's attorney may never be paid an attorney's fee for his services in this case. But the statute is there for all to read and it cannot be claimed that any lawyers undertake this type of litigation uninformed as to where his compensation shall come from and the maximum amount.